# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TY SCHISSEL,

        Plaintiff,

-vs-                                              Case No. 06-C-747

STEVEN B. CASPERSON, RICHARD VERHAGEN,
PATRICK LYNCH, and MS. NICHOLAI,

        Defendants.

## DECISION AND ORDER

Plaintiff Ty Schissel, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The court granted the plaintiff's motion for leave to proceed *in forma pauperis* on an equal protection claim based on allegations that other prisoners get security overrides to go to "lesser security institutional before their 'scheduled' dates" while the plaintiff does not. (Order of Oct. 4, 2006, at 8.) The defendants have filed a motion for summary judgment which will be addressed herein.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);

*McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## **FACTS**[1]

Defendant Richard Verhagen was employed by the Wisconsin Department of Corrections (DOC) as director of the Bureau of Offender Classification and Movement from October

---

[1] Facts are taken from Defendants' Proposed Findings of Fact. The plaintiff filed a response to Defendants' Proposed Findings of Fact in which he admits to, or denies due to "insufficient knowledge to form an opinion," the majority of the defendants' proposed facts. Although the plaintiff does dispute several of the defendants' proposed facts, his disputes do not cite to evidentiary material in the record and therefore, the facts in this section are undisputed. *See* Civil L.R. 56.2(b) (E.D. Wis.); Fed. R. Civ. P. 56(e).

2

3, 2004 until he retired on April 12, 2007. (Affidavit of Richard Verhagen [Verhagen Aff.] ¶ 2.) Defendant Verhagen has been employed by the State of Wisconsin since February 1977. *Id.* In his capacity as director, Verhagen's responsibilities included overseeing the administration and direction of the Bureau of Offender Classification and Movement. (Verhagen Aff. ¶ 3.)

Defendant Patrick Lynch is currently employed by the DOC as a corrections unit supervisor at the Stanley Correctional Institution (SCI). (Affidavit of Patrick Lynch [Lynch Aff.] ¶ 2.) Prior to this position, defendant Lynch was employed as an offender classification specialist at SCI from February 8, 2004 to February 3, 2007. *Id.* He has been employed by the State of Wisconsin since November 20, 1989. *Id.* In his capacity as offender classification specialist, Lynch's responsibilities included program review hearings, custody classification, bed space management, and inmate program assignments. (Lynch Aff. ¶ 3.)

Defendant Lynn Nicolai has been employed by the DOC as an offender classification specialist at SCI since 2002. (Affidavit of Lynn Nicolai [Nicolai Aff.] ¶ 2.) She has been employed by the State of Wisconsin since July 28, 1980. *Id.*

Defendant Steven Casperson was employed by the DOC as the administrator of DOC's DAI from July 1, 2001 to until his retirement on December 31, 2006. (Affidavit of Steven Casperson [Casperson Aff.] ¶ 2.) In his capacity as administrator, Casperson oversaw all maximum, medium, and minimum-security adult institutions in the State of Wisconsin, which comprise the DAI. *Id.* Defendant Casperson was responsible for the administration and direction of the DAI. (Casperson Aff. ¶ 3.)

**1. September 30, 2004 Program Review Committee Interview**

The plaintiff was housed at SCI from June 16, 2004 to July 25, 2006. (Lynch Aff.

3

¶ 12; Nicolai Aff. ¶ 12.)  He was interviewed by the program review committee[2] (PRC) on September 30, 2004, to re-evaluate his custody, placement, and program issues.[3]  (Verhagen Aff. ¶ 12; Lynch Aff. ¶ 13.)  The plaintiff attended the hearing.  *Id.*  The PRC consisted of Catrina Everitt, Thomas Sharpe, and Patrick Lynch.  (Verhagen Aff. ¶ 13; Lynch Aff. ¶ 14.)  The PRC noted that the plaintiff was serving his first incarceration as a violator of parole on a new sentence.  (Verhagen Aff. ¶ 14; Lynch Aff. ¶ 15.)  He was in absconder status for over six years and had since been convicted of burglary, false imprisonment, threats, felony possession of a firearm, failure to comply with officers, and attempted armed robbery.  *Id.*  The PRC noted that while in the DOC institutions, the plaintiff had one minor conduct report and two major conduct reports.  (Verhagen Aff. ¶ 16; Lynch Aff. ¶ 17.)  The last major conduct report was on May 1, 2001 for disobeying orders.  *Id.*  The PRC

---

[2] Every correctional institution and center shall have a program review committee composed of a classification specialist designated by the director as the chairperson of the program review committee and at least one other staff member designated by the warden to serve on the committee. Wis. Admin. Code § DOC 302.16. (Verhagen Aff. ¶ 11; Lynch Aff. ¶ 11; Nicolai Aff. ¶ 11.)

The purpose of program review is to: (1) provide systematic review of the inmate's needs relating to education, medical, clinical, social, offense-related and other treatment needs; (2) assess the inmate's custody classification; (3) assess the inmate's motivation to become involved in treatment and programs; (4) secure program or treatment space as needed to permit the inmate to complete an assignment; (5) provide the inmate with supplemental or alternative treatment or program assignments; (6) provide a review of the inmate's adjustment, conduct and program participation; (7) evaluate the inmate's risk; (8) establish a date not to exceed 12 months for the next program review; and (9) recommend placement changes to accommodate program objectives. Wis. Admin. Code § DOC 302.15. (Verhagen Aff. ¶ 10; Lynch Aff. ¶ 10; Nicolai Aff. ¶ 10.)

[3] The purpose of classification is to provide procedures for custody classification, program or treatment assignment, and transfers. Wis. Admin. Code § DOC 302.02(1). (Verhagen Aff. ¶ 5; Lynch Aff. ¶ 5; Nicolai Aff. ¶ 5.) The goals and objectives of classification are to: (a) classify every inmate based upon risk factors relative to public safety, institutional security, and staff and inmate safety; (b) establish and review the custody classification, program or treatment assignments, and institution placement that ensures public, staff, and inmate safety; (c) to involve inmates in the processes for custody classification, program or treatment assignments, and transfer consideration; (d) the extent possible, match inmate needs to institution resources; and (e) provide a documented current and historical reference of custody classification, program or treatment assignments, transfers and comments on each inmate. Wis. Admin. Code § DOC 302.02(2). (Verhagen Aff. ¶ 6; Lynch Aff. ¶ 6; Nicolai Aff. ¶ 6.) The purpose of a custody classification is to determine the appropriate placement of an inmate in order to regulate the supervision and movement of inmates among institutions, and between institutions and community programs. Wis. Admin. Code § DOC 302.04(1). (Verhagen Aff. ¶ 7; Lynch Aff. ¶ 7; Nicolai Aff. ¶ 7.)

4

also noted that the plaintiff had completed anger management and CGIP (cognitive group intervention program). (Verhagen Aff. ¶ 17; Lynch Aff. ¶ 18.) The plaintiff had a high risk rating in sentence structure, a moderate risk rating in emotional/mental health, and a low risk rating in all other areas. (Verhagen Aff. ¶ 18; Lynch Aff. ¶ 19.) He had a mandatory release date of June 6, 2012, and a maximum discharge date of January 11, 2019. (Verhagen Aff. ¶ 19; Lynch Aff. ¶ 20.) The PRC found that the parole commission noted the plaintiff had not served sufficient time for punishment and that release at that time would involve a risk to the public. (Verhagen Aff. ¶ 20; Lynch Aff.¶ 21.)

During his PRC interview, the plaintiff informed the PRC that he would like a transfer to the Winnebago Correctional Center or any other minimum custody facility.[4] (Verhagen Aff. ¶ 22; Lynch Aff. ¶ 23.) He also requested that the PRC transfer him to the Fox Lake Correctional Institution for vocational needs. (Verhagen Aff. ¶ 23; Lynch Aff. ¶ 24.) The plaintiff's social worker informed the PRC of the recommendation of a medium custody at SCI based on his high risk rating and program completion. (Verhagen Aff. ¶ 24; Lynch Aff. ¶ 25.)

The PRC considered public, staff, and inmate safety while reviewing and documenting custody classification, program assignment, and institution placement. (Verhagen Aff. ¶ 25; Lynch Aff. ¶ 26.) The PRC also considered DOC 302.07[5], the social workers' opinions, and

---

[4] The inmate may present additional information and state an opinion about the custody classification, program or treatment assignment, or institution placement at the PRC interview. Wis. Admin. Code § DOC 302.17(4). (Verhagen Aff. ¶ 22; Nicolai Aff. ¶ 22.) The inmate may present the additional information in writing if the inmate is unavailable for the PRC interview. *Id.*

[5] The department may consider factors that include but are not limited to the following in assigning custody classification:
(1) The nature and seriousness of the offense the inmate was convicted of. In evaluating the seriousness of the offense, the department may consider the following

5

the plaintiff's comments to the PRC. *Id.*

On October 28, 2004, the PRC recommended medium custody with retention at SCI based on the plaintiff's sentence structure, the nature of his offense, and positive institution

---

(a) Potential of physical danger to another.
(b) Harm done to the victim in the commission of the offense.
(c) whether the inmate exhibited physical aggressiveness that exposed another to harm.
(d) aggravating or mitigating factors in the commission of the offense for which the inmate was convicted.

(2) The inmate's criminal record and juvenile delinquency adjudications.

(3) The length of sentence being served.

(4) The inmate's motivation for the crime convicted of.

(5) The inmate's attitude regarding the offense and sentence.

(6) The inmate's record of adjustment and misconduct including any record of escape from a department facility, IS, a mental health facility, a local jail or any other confinement facility, or absconding from probation, parole, or extended supervision.

(7) The length of time the inmate has been in a particular custody classification and overall time served during the current period of incarceration.

(8) The inmate's medical and clinical needs, including physical or psychological treatment and observation.

(9) The risk to a victim, witness, the general public or the inmate of placing the inmate in the community where the offense was committed or where the institution is located. In determining this risk, the department may consider the general public's perception of the offense and the inmate as evidenced by statements of elected officials, judges, sheriffs, district attorneys, a victim, or a witness.

(10) The inmate's performance or refusal to participate in programs or treatment.

(11) A pending legal process, notification or detainer.

(12) Parole commission actions and stated expectations, and in the absence of any stated expectations, the likelihood of a release during the review period.

(13) The results of specially designed and researched risk rating instruments developed to assist with the individualized and objective assessment of a custody classification or program and treatment assignments and placements.

(14) The inmate's vulnerability to physical assault by other inmates.

Wis. Admin. Code § DOC 302.07. (Verhagen Aff. ¶ 8; Lynch Aff. ¶ 8; Nicolai Aff. ¶ 8.)

6

adjustment. (Verhagen Aff. ¶ 27; Lynch Aff. ¶ 28.) The PRC also set a twelve-month recall. *Id.* The plaintiff's case had been screened for earned release and challenge incarceration programs. (Verhagen Aff. ¶ 28; Lynch Aff. ¶ 29.) The PRC determined that the plaintiff was statutorily ineligible for both due to his Chapter 940 convictions. *Id.*

On November 1, 2004, the plaintiff submitted a Request for Review of Assessment and Evaluation or Program Review Action, appealing the PRC decision of October 28, 2004, and requesting that he be granted minimum classification. (Verhagen Aff. ¶ 29; Affidavit of Kathleen A. Nagle (Nagle Aff.) ¶ 5.) Kathleen Nagle[6] reviewed the plaintiff's appeal/request and found that the custody and placement decisions were appropriate based upon the nature of his offenses and dynamics of the case and the time likely to be served. (Verhagen Aff. ¶ 30; Nagle Aff. ¶ 6.) On November 22, 2004, Ms. Nagle affirmed the PRC recommendation. (Verhagen Aff. ¶ 31; Nagle Aff. ¶ 7.)

**2. September 20, 2005 Program Review Committee Interview**

The plaintiff was interviewed by the PRC on September 20, 2005, to re-evaluate his custody, placement, and program issues. (Verhagen Aff. ¶ 32; Lynch Aff. ¶ 33.) He attended the hearing. *Id.* The PRC consisted of Catrina Everitt, Deidre Hansen and Patrick Lynch. (Verhagen Aff. ¶ 33; Lynch Aff. ¶ 34.) The PRC noted the plaintiff's conviction history and that he was serving his first incarceration as a violator of parole on a new sentence. (Verhagen Aff. ¶ 34; Lynch Aff. ¶

---

[6] Kathleen Nagle is employed by the DOC as a classification section chief - director of assessment and evaluation. She has held this position since October 11, 1999. (Nagle Aff. ¶ 2.) Ms. Nagle's job duties include the development and implementation of the process by which a DOC inmate is assessed and evaluated when placed in the custody of the DAI. (Nagle Aff. ¶ 3.) As classification section chief - director of assessment and evaluation, Ms. Nagle has authority to review and decide Requests for Review of Assessment and Evaluation or Program Review Action, appealing PRC decisions. (Nagle Aff. ¶ 4.) Ms. Nagle had no further involvement with regard to this matter. (Nagle Aff. ¶ 14.)

7

35.) He was in absconder status for over six years and had since been convicted of burglary, false imprisonment, threats, felony possession of a firearm, failure to comply with officers, and attempted armed robbery. *Id.* The PRC noted that while in the DOC institutions, the plaintiff had one minor conduct report and two major conduct reports. (Verhagen Aff. ¶ 35; Lynch Aff. ¶ 36.) The PRC also noted that the plaintiff had completed anger management and CGIP (cognitive group intervention program) 1 and 2. (Verhagen Aff. ¶ 36; Lynch Aff. ¶ 37.) The plaintiff had a moderate risk rating in sentence structure and emotional/mental health, and a low risk rating in all other areas. (Verhagen Aff. ¶ 37; Lynch Aff. ¶ 38.) He had a mandatory release date of April 10, 2012, and a maximum discharge date of November 13, 2018. (Verhagen Aff. ¶ 38; Lynch Aff. ¶ 39.) The PRC found that the parole commission noted the plaintiff's offenses and sentence were discouraging but that he had been a very good inmate who could be depended on and who had completed his treatment goals. (Verhagen Aff. ¶ 39; Lynch Aff. ¶ 40.) The PRC also found that the parole commission noted that the plaintiff may be a candidate for long-term minimum classification. *Id.*

The plaintiff informed the PRC that he would like a transfer to any minimum facility with community custody. (Verhagen Aff. ¶ 40; Lynch Aff. ¶ 41.) He also informed the PRC that he was minimum while out-of-state and presented CCA Classification forms as evidence. (Verhagen Aff. ¶ 41; Lynch Aff. ¶ 42.) The PRC noted the plaintiff's statements regarding his custody while out-of-state. (Verhagen Aff. ¶ 42; Lynch Aff. ¶ 43.) The forms he produced were in regard to CCA's internal tracking of conduct. *Id.* The PRC noted that the plaintiff was actually in maximum custody while housed out-of-state, not the minimum he was claiming to have had. *Id.* The plaintiff's social worker informed the PRC of the recommendation of medium custody at SCI based on his moderate risk rating and time to mandatory release. (Verhagen Aff. ¶ 43; Lynch Aff. ¶ 44.)

8

The PRC considered public, staff, and inmate safety while reviewing and documenting custody classification, program assignment, and institution placement. (Verhagen Aff. ¶ 44; Lynch Aff. ¶ 45.) The PRC also considered DOC 302.07, the social workers' opinions, and the plaintiff's comments to the PRC. *Id.* On October 6, 2005, based on the case analysis, the PRC recommended medium custody with retention at SCI based on the plaintiff's projected time to serve and the severity of his offenses. (Verhagen Aff. ¶ 45; Lynch Aff. ¶ 46.) The PRC also set a twelve-month recall with an expectation of maintaining improved adjustment. *Id.* The plaintiff's case had been screened for earned release and challenge incarceration programs. (Verhagen Aff. ¶ 46; Lynch Aff. ¶ 47.) The PRC determined that the plaintiff was statutorily ineligible for both due to his Chapter 940 convictions. *Id.*

On October 20, 2005, the plaintiff submitted a Request for Review of Assessment and Evaluation or Program Review Action, appealing the PRC decision of October 6, 2005, and requesting that he be granted minimum classification. (Verhagen Aff. ¶ 47; Nagle Aff. ¶ 8.) The plaintiff stated that he knew of other inmates with similar time and offenses who had been given minimum classification. *Id.*

Ms. Nagle reviewed the plaintiff's appeal/request and found that the custody and placement decisions were appropriate based upon his sentence, the nature of his offenses, and the time likely to be served. (Verhagen Aff. ¶ 48; Nagle Aff. ¶ 9.) On November 9, 2005, Nagle affirmed the PRC recommendation. (Verhagen Aff. ¶ 49; Nagle Aff. ¶ 10.)

On November 29, 2005, a Program Change/Informational PRC was held to detail the status of the AODA (alcohol and other drug abuse) level designation listed on the plaintiff's A&E needs. (Lynch Aff. ¶ 48.) It was found that the plaintiff had not successfully completed treatment

9

from his 1988-1989 enrollment in AODA programming and that it was terminated for conduct reasons. *Id.* The PRC saw the need to evaluate the status of the plaintiff's needs as appropriate and ordered one be completed. *Id.* On March 13, 2006, it was found that the plaintiff was in need of AODA residential and it was added as a need. (Lynch Aff. ¶ 49.)

**3. May 24, 2006 Program Review Committee Interview**

The plaintiff was interviewed by the PRC on May 24, 2006, and he attended the hearing. (Verhagen Aff. ¶ 50; Nicolai Aff. ¶ 13.) The PRC consisted of Catrina Everitt, Barbara Danko and defendant Nicolai. (Verhagen Aff. ¶ 51; Nicolai Aff. ¶ 14.) The PRC noted that the plaintiff was serving his first incarceration as a violator of parole on a new sentence. (Verhagen Aff. ¶ 52; Nicolai Aff. ¶ 15.) He was in absconder status for over six years and had since been convicted of burglary, false imprisonment, threats, felony possession of a firearm, failure to comply with officers and attempted armed robbery. *Id.* The PRC noted that while in the DOC institutions, the plaintiff had one minor conduct report and two major conduct reports. (Verhagen Aff. ¶ 54; Nicolai Aff. ¶ 17.) The PRC also noted that the plaintiff had completed chemical dependency evaluation, anger management, and CGIP 1 & 2. (Verhagen Aff. ¶ 55; Nicolai Aff. ¶ 18.) The PRC found that he was in need of AODA treatment but that the plaintiff had no motivation to complete that program. *Id.* He had a moderate risk rating in sentence structure and mental health and a low risk rating in all other areas. (Verhagen Aff. ¶ 56; Nicolai Aff. ¶ 19.) The plaintiff had a mandatory release date of April 10, 2012, and a maximum discharge date of November 13, 2018. (Verhagen Aff. ¶ 57; Nicolai Aff. ¶ 20.) The PRC found that the parole commission noted the plaintiff had a need to serve additional time, continue positive adjustment, and that he would eventually transition to reduced custody to demonstrate reduced risk. (Verhagen Aff. ¶ 58; Nicolai Aff. ¶ 21.)

10

The plaintiff told the PRC that he would like a transfer to the Oshkosh Correctional Institution, a medium custody facility, to participate in the computer vocational education and the AODA program that has been identified. (Verhagen Aff. ¶ 59; Nicolai Aff. ¶ 23.) The plaintiff also informed the PRC that he did not want to go to the New Lisbon Correctional Institution. (Verhagen Aff. ¶ 60; Nicolai Aff. ¶ 24.) The plaintiff stated that he already had a plan in the works if he should end up there. *Id.* The plaintiff's social worker informed the PRC of the recommendation of a medium custody based on his risk rating and a transfer to an appropriate facility on available bed space. (Verhagen Aff. ¶ 61; Nicolai Aff. ¶ 25.)

The PRC considered public, staff, and inmate safety while reviewing and documenting custody classification, program assignment, and institution placement. (Verhagen Aff. ¶ 62; Nicolai Aff. ¶ 26.) The PRC also considered DOC 302.07, the social workers' opinions, and the plaintiff's comments to the PRC. *Id.* The PRC recommended medium custody with a transfer to New Lisbon Correctional Institution based on the plaintiff's projected time to serve, the nature of his offense, the security request, and positive institution adjustment. (Verhagen Aff. ¶ 63; Nicolai Aff. ¶ 28.) The PRC also set a twelve-month recall. *Id.* The plaintiff's case had been screened for earned release and challenge incarceration programs. (Verhagen Aff. ¶ 64; Nicolai Aff. ¶ 29.) The PRC determined that the plaintiff was statutorily ineligible for both due to his Chapter 940 convictions. *Id.*

On July 10, 2006, the plaintiff submitted a Request for Review of Assessment and Evaluation or Program Review Action, appealing the PRC decision of May 24, 2006. (Verhagen Aff. ¶ 65; Nagle Aff. ¶ 11.) Nagle reviewed the plaintiff's appeal/request and found that the custody and placement decisions were appropriate based upon his sentence, offenses history, nature of the

11

offense, program assessment and involvement, and the time likely to be served. (Verhagen Aff. ¶ 66; Nagle Aff. ¶ 12.) On August 10, 2006, Nagle affirmed the PRC recommendation. (Verhagen Aff. ¶ 67; Nagle Aff. ¶ 13.) Due to the plaintiff being on absconder status for six years, the assaultive history of his convictions, and the length of time remaining on his incarceration he was felt to be too much of a risk for reduced custody classification at that time.[7] (Verhagen Aff. ¶ 71; Lynch Aff. ¶ 53; Nicolai Aff. ¶ 33.)

## ANALYSIS

The defendants contend that this case should be dismissed because the plaintiff failed to exhaust his administrative remedies before commencing this action. The defendants further contend that they cannot be liable under 42 U.S.C. § 1983 because they were not personally involved in the decision not to give the plaintiff a security override. Finally, the defendants contend that they did not violate the plaintiff's equal protection rights since they had a legitimate non-discriminatory basis for not giving him a security override.

The plaintiff contends that the court should deny the defendants' motion for summary judgment because they have not presented any evidence showing that he was not being treated differently from other similarly situated inmates. The plaintiff further contends that he did exhaust

---

[7] Custody classification is determined by assessing the risk of each inmate regarding: (a) Assaultive or predatory behavior; (b) Escape, walk-away, and absconding occurrences; (c) Violations of inmate disciplinary rules under DOC 303; (d) disruption to the orderly processes of an institution; (e) participation and progress in program or treatment; (f) adjustment and history under community supervision; and (g) pending legal processes. Wis. Admin. Code § DOC 302.04(2). (Verhagen Aff. ¶ 68; Lynch Aff. ¶ 50; Nicolai Aff. ¶ 30.) Each inmate is assessed individually. (Verhagen Aff. ¶ 69; Lynch Aff. ¶ 51; Nicolai Aff. ¶ 31.) While an inmate may receive an override and get a lower custody classification prior to being low risk on the risk rating (go to "lesser security institutions before their 'scheduled' dates"), the inmate must meet the recommended criteria set forth in the Wisconsin Administrative Code § DOC 302. *Id.* Other factors such as bed space, program completion, escape history, deferment from the Parole Commission, non-assaultive offenses, and number of incarcerations also may affect custody classification. (Verhagen Aff. ¶ 70; Lynch Aff. ¶ 52; Nicolai Aff. ¶ 32.)

12

his administrative remedies.

**A. Exhaustion**

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The defendants contend that the plaintiff failed to exhaust administrative remedies because the plaintiff's appeal of the recommendation of his May 24, 2006, PRC interview was not completed before he commenced this lawsuit. The defendants do not address the plaintiff's appeals

13

of his September 30, 2004 and September 20, 2005 PRC interviews, which were completed before he commenced this lawsuit.

In support of his contention that he did exhaust, the plaintiff cites to defendant Verhagen's affidavit as well as the defendants' proposed findings of fact ¶ ¶ 34, 36, 48-49, 56-57, 66-67, and 75-77, which for the most part show that the plaintiff appealed the recommendations from his PRC interviews that he remain in medium custody. Furthermore, the plaintiff asserts that he is not challenging the specific findings of the PRC interviews, only the process utilized.

> Plaintiff believes an administrative appeal cannot reach the merits of plaintiff's action – i.e. a challenge to the PRC procedures[s] utilized. The appeal form is self-explanatory – i.e. a review of a prisoner's A & E Program Review action. It does not allow for comparisons – i.e. comparing plaintiff's PRC action to other prisoners. It is specific to plaintiff. It cannot address plaintiff's argument that he is being treated differently than other similarly situated prisoners because it is only designed to address plaintiff's specific issues related to him only.

(Pl.'s Resp. at 4 .)

In reply, the defendants first contend that the plaintiff apparently concedes that he exhausted. The defendants further contend that now the plaintiff is arguing that "he is not challenging the specific finding - only the process utilized . . ." at his PRC interviews, he failed to exhaust because he never utilized the Inmate Complaint Review System by filing an inmate complaint regarding the procedure used in the program review process by a PRC. (Defs.' Reply Br. at 2; Affidavit of Thomas J. Gozinske ¶ 4.)

It is undisputed that, with respect to the plaintiff's May 24, 2006 PRC interview, the PRC recommended against a security override for the plaintiff on July 3, 2006, and although the plaintiff appealed on July 10, 2006, the final decision on the appeal was not made until August 10,

14

2006, which was after this action was filed on July 11, 2006. A claim filed by a prisoner before administrative remedies have been exhausted must be dismissed, even if the prisoner exhausts administrative remedies before judgment. *See Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Thus, the plaintiff failed to exhaust with respect to his May 24, 2006 PRC interview.

It is also undisputed that the plaintiff never filed an inmate complaint under the Inmate Complaint Review System regarding the procedure used in the program review process by the PRC. Wisconsin Administrative Code § DOC 310.08(3) provides that "an inmate may use the ICRS to challenge only the procedure used in the program review process . . . ." Based on the plaintiff's assertion that he was only challenging the procedure utilized at his PRC interviews, the availability of the Inmate Complaint Review System as an administrative remedy to challenge the procedures used in the program review process, and the plaintiff's failure to utilize the Inmate Complaint Review System, the court concludes that the plaintiff failed to exhaust administrative remedies. Thus, the defendants' motion for summary judgment will be granted.

## ORDER

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket #27) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

15

Dated at Milwaukee, Wisconsin, this 4th day of March, 2008.

**SO ORDERED,**

s/ Rudolph T. Randa

**HON. RUDOLPH T. RANDA**
**Chief Judge**